ROSTELL *v.* ARK. & OZARKS RY. CORP.

5-1854                                    323 S. W. 2d 539

Opinion delivered May 4, 1959.

*M. A. Hathcoat,* for appellant.

*Virgil D. Willis* for appellees Ark. & Ozark Ry. Corp. *et al*; *J. Loyd Shouse* and *Walker & Villines* for Appellees Turney Wood Products, Inc., and Joe Miller.

J. SEABORN HOLT, Associate Justice.    This litigation involves the construction of the provisions in two deeds, referred to as Exhibit "A" and Exhibit "B".    **The facts** are not in dispute.    Appellants, Josephine Rostell, John E., Kenneth F., and James C. Murray, and Martha Miller and Lucille Finch, are the sole heirs at law of C. C. Mur-

y and his wife Iosie Murray. On December 13, 1900, . C. Murray and his wife executed to the St. Louis and orth Arkansas Railroad Company the warranty deed, - Exhibit "A" above, which deed contained the following provisions (material here): "Know All Men By These Presents, That we, Josie Murray and Cecil Murray, her husband, for and in consideration of the sum of Eleven Hundred Dollars to us in hand paid by the St. Louis and North Arkansas Railroad Company, the receipt whereof is hereby acknowledged, and covenants of said railroad company hereinafter made to us, do grant, bargain, sell and convey and have hereby granted, bargained, sold, and by these presents do hereby grant, alien, relinquish, sell and convey unto the said St. Louis and North Arkansas Railroad Company, its successors and assigns the following described property, to-wit:" (then follows a metes and bounds description of 117 9/16 acres of land) "To have and to hold afore granted premises given with all the rights, privileges and appurtenances thereunto belonging or in anywise appertaining. We hereby covenant to and with said railroad company that we are seized of said lands in a fee simple title that we will and our heirs, executors, administrators and assigns shall forever warrant and defend the title to the same against the lawful claims of all persons whomsoever. This land is granted to said railroad company for railroad purposes and is to be used by said railroad company for the purpose of keeping and maintaining a railroad station on the same and to be used by it for purposes connected with said railroad and the operation thereof. (added in ink) And for no other purposes."

Thereafter, on September 27, 1905, C. C. Murray and wife executed to the St. Louis and North Arkansas Railroad Company the other deed above, Deed "B", which contained the following provisions: "Know All Men By These Presents, That we, Josephine Murray and C. C. Murray, her husband, of Harrison, Boone County, Arkansas, in consideration of the sum of Fifteen Hundred ($1,500) Dollars, to us in hand paid by the St. Louis and North Arkansas Railroad Company, the receipt of

which is hereby acknowledged, as well as the payment by said railroad company of the costs in a suit pending in Boone Circuit Court, in which Josephine Murray is Plaintiff and the said railroad company, Defendant, have granted, bargained and sold and by these presents do grant, bargain, sell and convey to the said St. Louis and North Arkansas Railroad Company, its successors and assigns in addition to the land heretofore conveyed to it by us for right of way and station ground east of and near Harrison, Arkansas, the following described tract or parts of land, to-wit:'' (then follows a metes and bounds description) ''To have and to hold the same to the said St. Louis and North Arkansas Railroad Company, its successors and assigns so long as it may use the same for railroad purposes but no longer, and in consideration of said sum of money in addition to the conveyance above set forth we do hereby release and relinquish to said St. Louis and North Arkansas Railroad Company all claims or damages growing out of the conveyance by us to said St. Louis and North Arkansas Railroad Company of the station ground heretofore conveyed by us to it. ——''

Appellees, on December 11, 1957, filed the present suit against the above appellants, the sole heirs at law of C. C. and Josie Murray, alleging ownership in all the lands described in the above deeds, Exhibit ''A'' and ''B'', and prayed that appellants ''be declared to have no interest in and to said lands, either past or reversionary'' and that title in fee to the lands be quieted and confirmed in appellees. In their answer, the appellants admitted execution of the two deeds above, but alleged ''that since said lands were abandoned for use as railroad property, by the terms, conditions and reservations in said deeds, all rights of St. Louis and North Arkansas Railway Company and its successors in title, to said lands, ceased to exist; and that the title to said lands conveyed by said deeds to St. Louis and North Arkansas Railroad Company has reverted to the heirs of Josie Murray and C. C. Murray.'' A trial on October 30, 1958 resulted in a decree holding that deed ''A'' above, executed by C. C. Murray and wife on December 13, 1900,

conveyed a full and complete fee simple title to the St. Louis and North Arkansas Railroad Company, its successors in title and assigns, free from any rights of appellants. It further held that Josephine Rostell and other appellants named above, were the owners as tenants in common of the land described in deed "B". Gross, *et al,* as third party defendants and cross-appellants, have appealed from the decree relating to deed "B", which we later discuss. The present appeal of appellants is from that part of the decree awarding to appellees, Arkansas and Ozarks Railway Corporation, the ownership in fee of the lands described in deed "A". The appellants stoutly contend that the provisions in deed "A" were intended to and did create a determinable fee and that the title has reverted to them. We do not agree. We think the chancellor's interpretation of deed "A" was correct. In the recent case of *Davis* v. *St. Joe School District,* 225 Ark. 700, 284 S. W. 2d 635, wherein we had for consideration the provisions of a deed, similar in effect, to those presented here, in holding that title in fee was conveyed and not a determinable fee, we said: "The question is whether this deed conveyed (a) a fee simple defeasible, which might be either a determinable fee or a fee simple on condition subsequent, or (b) the fee simple absolute, with a covenant binding the grantee to the specified use of the property. . . . At the outset it must be noticed that the deed before us does not contain language unmistakably describing either form of defeasible fee. The language customarily used is familiar enough. A determinable fee is ordinarily created by a provision that the grantee's estate is to continue 'as long as' the property is used for a certain purpose or 'until' a given event occurs, or by similar words limiting the duration of the estate. A fee on condition subsequent is most effectively described by an express declaration of the condition and by the further reservation of a right of re-entry upon condition broken. . . . In the case at bar the grantors' failure to employ language unequivocally creating a defeasible fee is a circumstance indicating that the parties did not have such an estate in mind. . . . The courts, in construing language that lies in the borderland between a clearly defined defeasible fee

and a plainly stated covenant, have given weight to several external circumstances that may indicate the parties' intent. See Rest., Property, Sec. 44, Comment m, and Sec. 45, Comment p. In the present case one of these factors—the ratio between the worth of the consideration and the value of the property—is especially persuasive. It is a sensible rule that as the worth of the consideration approaches the full market value of the property there is a correspondingly stronger inference that a defeasible fee was not intended. If a man conveys land to a school district purely as a gift and declares that it shall be used for school purposes only, it is reasonable to believe that he means to condition his generosity upon obedience to his wishes; for his benevolence is the only motive for the conveyance. But if the land is sold to the district for its full value it is not reasonable to believe that a similar restriction is intended to carry the severe penalty of a complete loss of title. In the second instance the consideration is probably the principal inducement for the transfer. Hence in the latter case the restrictive language is more fairly regarded as a covenant, upon which the remedy in damages is deemed adequate. . . ."

Here the deed recites a consideration of $1,100. It is not contended that this was not full value for the land in question which was conveyed in warranty deed form, with the usual granting clause, *habendum* and covenant of warranty, together with a definite metes and bounds description, all of which were factors strongly indicating, we think, that a fee title was intended to be conveyed. Had the grantors intended to create a determinable fee, it would have been very easy to have said so, or spelled it out, in a reverter clause in language so plain that all could understand. We hold, as indicated, that a fee simple title was conveyed.

On the cross-appeal of Gross and Schwartz, third party defendants, little need be said. The record reflects that following the trial on October 30th, and after the court's decision was filed, Gross and Schwartz, on November 13, 1958, filed a motion for a re-hearing, alleging in substance that at the time the case was submit-

ted on the issues, they were unfamiliar with the record of title and were unable to find such record until subsequent to the submission of the case.

On hearing and considering this motion, the trial court over-ruled it and entered the following order. "ORDER. On this 20th day of November, 1958, is submitted to the Court Motion of Third Party Defendants, Meyer P. Gross and Maurice I. Schwartz, for re-hearing together with the response thereto by John E. Murray and other Defendants in the Original Complaint of Plaintiff. Upon consideration thereof, the Court finds: That said cause was submitted to the Court for judgment on October 30, 1958, after all parties through their respective attorneys had stated in open court, that they did not desire to introduce any other evidence. That there is no justification for re-opening said cause, and that motion for re-hearing filed herein by said Third Party Defendants should be denied." We think the order was correct in the circumstances. Clearly cross-appellants have not shown due diligence, their motion shows some lack of good faith, and comes too late.

The records shows that before the court made the above order, the chancellor made the following statement to counsel: "This cause was filed in December of 1957, and was heard by the Court on October 30, 1958. At that time the Court asked all parties if they had introduced all the evidence they desired to introduce and all respective counsel announced that they had done so."

Accordingly, we affirm on both direct-appeal and cross-appeal.