John A. ROACH et ux *v.* Roy Roscoe TERRY
et al

78-26                                    567 S.W. 2d 286

Opinion delivered June 26, 1978
(Division II)

*Otis Linebarier* and *Stephen Dee Carver*, for appellants.

*Johnson & Tarvin*, by: *William E. Johnson* and *Robert B. Wellenberger*, for appellees.

DARRELL HICKMAN, Justice. This action arose when the appellants, John A. Roach and his wife, filed suit to quiet title in them to 70 acres of land in Drew County, Arkansas. The land was originally owned by appellees, Roy Terry and his former wife, Martha.[1] Terry had filed for bankruptcy in Texas in 1974, and a trustee was appointed. Terry gave Roach an option to purchase the land in 1976. Shortly afterward, Terry deeded the land to appellee, Johnny Donaldson. Roach, rather than exercise his option, secured a bankruptcy trustee's deed. The appellee Commercial Bank and Trust of Monticello was a mortgagee for Terry. After hearing all the testimony and reviewing the evidence, the chancellor concluded that title vested in Johnny Donaldson and his father, Raymond. We find the chancellor's decision is not against the preponderance of the evidence and affirm the decree.

The appellants allege three errors regarding the chancellor's findings. It is, therefore, necessary to review in some detail the facts of their case. The crucial issue on review is whether the Donaldsons or Commercial Bank and Trust of Monticello had actual or constructive notice of Terry's bankruptcy proceedings. Of course, if they had notice, their stature as bona fide purchasers would be overcome, and appellants would take title to the property.

Terry and his wife purchased the land by warranty deed on March 6, 1963. Later that year, Terry and his wife were divorced in Texas. However, the divorce decree specifically gave title to Terry.

On September 12, 1974, Terry began bankruptcy

---

[1]Martha had given a quitclaim deed to Roach and was dismissed as a party to this action. A property settlement agreement between Roy and Martha Terry provided Roy was to receive the 70 acres. The appellants joined Martha as a party but dismissed her during the action and she is not bound by the decree.

proceedings in federal district court in Texas. E. Warren Goss was appointed as the trustee in bankruptcy of Terry's property. Mr. Goss eventually negotiated for the sale of the land to appellants.

After having filed for bankruptcy, Terry executed an option to purchase the land in favor of appellants on January 16, 1976. This option was filed on January 19 and remained in force until March 19, 1976. During the pendency of the option, appellants learned of the bankruptcy proceedings from the Union Bank and Trust Company, which held the first lien on the land. The Roachs then began to deal directly with the trustee, Mr. Goss, for the purchase of the land. Goss filed a petition for sale on March 4, 1976, in the Texas federal court. The order granting the sale was entered on April 26, 1976, and the deed was delivered on July 6, 1976. Although the order of sale was filed in Drew County, Arkansas, on April 26, and the trustee's deed was filed on July 15, nothing was filed during the pendency of the option that would have put the Donaldsons on notice of the Roachs' claim to the property. Both the order of sale and the trustee's deed were subject to there being no adverse claim to title, and conditioned on the Roachs assuming any outstanding liens.

While these negotiations were taking place, Terry entered into a purchase agreement for the land with Raymond Donaldson on February 6, 1976. This agreement was filed in Drew County on February 9.[2] The Donaldsons had consulted an attorney before buying the land. The attorney had two checks run on the record for irregularities or discrepancies. He learned of the option and the first lien and from Terry he learned of the divorce proceedings and acquired a copy of the settlement agreement. Since Terry's wife could not be located, a quitclaim deed was prepared from Terry to Johnny Donaldson. On April 6, 1976, Johnny Donaldson filed the quitclaim deed of record in Drew County. It was filed before Roach filed any deed or claim to the property. See Ark. Stat. Ann. § 16-115 (Repl. 1968). Raymond Donaldson testified he was acting for his son, Johnny,

---

[2]Terry had worked for Raymond Donaldson and had accepted a $1,000 check from him to hold towards the purchase price of the land in December, 1975.

when the agreement was signed. The trial judge held they owned the property together — a finding not challenged on appeal by appellees.

The Commercial Bank and Trust Company is a party to this action by virtue of the fact it had a mortgage from Terry on the property dated March 19, 1976. Its claim in this lawsuit becomes moot if the Donaldsons are held to have superior title.

The question becomes, were the Donaldsons bona fide purchasers for value without notice of the right of the bankruptcy court to dispose of the land. This assumes, of course, that the bankruptcy court alone had authority to dispose of Terry's land, a fact not seriously refuted by the appellees. The Roachs argue that the appellees had actual notice of the bankruptcy court's authority because they could have learned of the bankruptcy proceedings by exercising ordinary diligence and, therefore, knew that Terry could not gain good title to the land. *Woods* v. *Wright*, 254 Ark. 297, 493 S.W. 2d 129 (1973).

It was undisputed that the Donaldsons had no constructive notice because nothing was filed in Drew County indicating that Terry had been bankrupt. It was undisputed that the trustee did not comply with the bankruptcy act and failed to file any notice in Drew County, Arkansas, regarding a claim against the property. See 11 USCA § 44 (g) (1961).

The Donaldson's attorney testified that he knew of the option, but at the time the quitclaim deed was prepared it had not been exercised. There was a conversation which took place in the lawyer's office and Johnny Donaldson conceded that something was said about bankruptcy at the time he acquired the deed. However, Johnny Donaldson testified that Terry told him in the presence of his lawyer that he had been bankrupt but that was all cleared up. This was the extent of admitted knowledge of the bankruptcy court's authority over the land.

Whether the Donaldsons had exercised due diligence was a question of fact for the chancellor. After an examina-

tion of the record, we cannot say that the chancellor's finding was clearly against the preponderance of the evidence. *Woods v. Wright, supra.*

One other issue needs to be addressed. The appellants failed to properly abstract the record and were in flagrant violation of Rule 9 of the Supreme Court Rules. The appellees supplied most of the deficiency in the record and asked to be reimbursed for that expense. We allowed the appellants before submission of the case to supplement the record; however, the appellees' attorney's request for $1,-554.40 for the cost of extra printing and attorney's fees has merit and should be granted. We feel it is appropriate in this case to award to the appellees as costs against the appellants the requested amount of money.

Therefore, the judgment of the chancellor is affirmed and the appellees are granted $1,554.40 to be taxed as costs against the appellants.

Affirmed.

We agree. HARRIS, C.J., and BYRD and HOWARD, JJ.